IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN PAUL CRAIG,                                    3:15-CV-00529-BR

       Plaintiff,                                  OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

       Defendant.


TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 370578
Law Vegas, NV 89137
(702) 240-0184

       Attorneys for Plaintiff

BILLY J. WILLIAMS
Acting United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**GERALD J. HILL**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-2139

      Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff John Paul Craig seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

## ADMINISTRATIVE HISTORY

      Plaintiff protectively filed his application on February 10, 2012, and alleged a disability onset date of June 19, 2010. Tr. 146-48, 156.[1] The application was denied

---

      [1] Citations to the official transcript of record filed by the Commissioner on April 13, 2015, are referred to as "Tr."

initially and on reconsideration.  An Administrative Law Judge

(ALJ) held a hearing on September 3, 2013.  Tr. 34-66.  At the

hearing Plaintiff was represented by an attorney.  Plaintiff and

a vocational expert (VE) testified.

The ALJ issued a decision on September 19, 2013, in which he

found Plaintiff is not disabled.  Tr. 15-29.  Plaintiff submitted

additional evidence to the Appeals Council.  That decision became

the final decision of the Commissioner on February 9, 2015, when

the Appeals Council denied Plaintiff's request for review.

Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On March 31, 2015, Plaintiff filed a complaint in this Court

seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born in June 1964 and was 46 years old on his

alleged onset date.  The record is not clear as to his

education.[2]  Tr. 39, 161.  Plaintiff has past relevant work

experience as a superintendent of bridge construction,

construction welder, and structural-steel worker.  Tr. 28.

Plaintiff alleges disability due to a "broken back and

---

[2] In March 2012 Plaintiff reported to the Social Security
Administration that he obtained a GED in 1980.  Tr. 161.  At the
hearing before the ALJ, however, Plaintiff testified he did not
obtain a GED but only completed the seventh grade.  Tr. 39.

messed up surgery to fuse my back, back injury, and medication[s] they are giving me." Tr. 160.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9th Cir. 2009)).  It is more than a mere scintilla [of evidence]
but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d
at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v.
Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe

impairment or combination of impairments.  20 C.F.R.
§ 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform

work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged
in substantial gainful activity (SGA) since his June 19, 2010,
alleged onset date.  Tr. 20.  The ALJ found Plaintiff meets the
insured status requirements through December 31, 2014.

At Step Two the ALJ found Plaintiff has severe impairments
including degenerative disc disease of the spine with residual
chronic pain.  Tr. 20.

At Step Three the ALJ found Plaintiff's impairments do not

7 - OPINION AND ORDER

meet or equal any listed impairment.  Tr. 22.  The ALJ found Plaintiff has the RFC for less than a full range of light work and can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours; and sit for two hours in an eight-hour work day.  He can occasionally climb ramps and stairs but should not climb ladders, ropes, or scaffolds.  He should not be exposed to hazards such as unprotected heights.  He can occasionally stoop, kneel, crouch, crawl, and occasionally operate foot controls.  Tr. 22.

At Step Four the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 28.

At Step Five the ALJ found Plaintiff is able to perform the occupations of production assembler, hand-packager, wafer breaker semi-conductor, and taper circuit layout.  Tr. 29.


**<u>DISCUSSION</u>**

Plaintiff contends the Appeals Council erred by reviewing but failing to include in the record a March 2014 medical source statement from treating physician Marc. C. Rothgery, M.D. Plaintiff submits the document to this Court as Exhibit 1. Plaintiff also contends the Commissioner erred by (1) improperly finding Plaintiff's testimony was not fully credible, (2) failing at Step Two to find pseudoarthrosis is a severe impairment, (3) improperly weighing medical evidence, and (4) posing an

incomplete hypothetical question to the VE.

**I.    The ALJ erred when he found Plaintiff was less than fully credible.**

Plaintiff contends the ALJ erred when he found Plaintiff's testimony was not fully credible.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008). The ALJ's findings, however, must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001). Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.* The evidence on which the ALJ relies must be substantial. *Id.* at 724. *See also Holohan,* 246 F.3d at 1208. General findings (*e.g.,* "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208.

When deciding whether to accept a claimant's subjective

symptom testimony, "an ALJ must perform two stages of analysis:
the *Cotton* analysis and an analysis of the credibility of the
claimant's testimony regarding the severity of her symptoms."
*Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged." *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08.  The *Cotton* test imposes only
> two requirements on the claimant:(l) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.  *See also Carmickle v. Comm'r Soc. Sec.*
*Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

   If the claimant satisfies the above test and there is not
affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester v. Chater,* 81 F.3d 821, 834
(9th Cir. 1995)).  The ALJ's findings must be "sufficiently
specific to permit the court to conclude that the ALJ did not
arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,*
278 F.3d 947, 958 (9th Cir. 2002).

## A.  Plaintiff's Testimony

In his Adult Function Report dated May 7, 2012, Plaintiff reported he lives with his family.  He cares for his four-year-old daughter by feeding her and working on the computer with her. His wife bathes and cleans their daughter.  Tr. 187.

Plaintiff stated he cannot bend down to pick up anything and is in constant severe pain.  Tr. 186.  Plaintiff reported pain wakes him up whenever he turns over.  He cannot put on his shoes and socks or wash his feet.  Tr. 188.  His wife prepares most of the meals.  He does laundry once a week for a couple of hours, but he does not do other house or yard work because of back pain. Tr. 189.  He is no longer able to go fishing, but he plays some computer games.  He stopped attending weekly poker games because of back pain.  Tr. 191.  Plaintiff cannot lift more than 20 pounds or bend.  He can walk about 100 yards before requiring rest.  He uses a cane and has a back brace.  Tr. 192.  Plaintiff takes Dilaudid, which causes fatigue.  Tr. 192.

At the September 2013 hearing before the ALJ, Plaintiff testified he had completed the seventh grade.  Tr. 39.  He dropped out of school to go to work.  For the past 23 years he worked in heavy highway and bridge construction.  He had back surgery in June 2010 and was scheduled to see another neurosurgeon.  Tr. 40.

Plaintiff had a medical marijuana card at one time, but he

11 - OPINION AND ORDER

has not used it for over a year and does not use amphetamines.
Tr. 41.  Plaintiff testified he takes four milligrams of
hydromorphine every four hours.  Tr. 42.  The medication is not
completely effective, but "it does numb it a bit."  Tr. 43.  His
wife works, and he "stay[s] at home with [my daughter].  I don't
know who takes care of who more.  She takes care of me or I take
care of her."  Tr. 43.  His pain is in his back rather than his
legs.  He takes Requip, however, for restless-leg syndrome.  His
physician is tapering him off gabapentin to see whether that will
stop his nightmares.

Plaintiff believes he could not maintain a job on an
assembly line because "[g]etting out of bed in the morning, for
one thing, and being able to sit there in one spot."  Tr. 45.
His pain is worse in the morning.  His daughter will start school
in the fall, and his wife will be getting her ready.  Tr. 46.  On
a normal day he plays on the computer with his daughter and is on
the couch or in bed most of the day.  His daughter wakes him from
his naps.

He testified he can sit upright for five or ten minutes.  If
he reclines, he can sit for about an hour.  Tr. 49.  Sitting is
more difficult than standing.  Tr. 48.  He lies down flat on his
back every couple of hours during the day for 30 minutes to two
hours.  Tr. 50.  He can stand for one or two hours.  He uses a
walking stick and a cane if he has to bend.  He has not been able

to put on socks for years and uses a grabber tool.  Tr. 52.  If
he reaches too far, his legs might buckle.  He is about ten times
slower than he was before surgery.  Tr. 53.

Plaintiff said getting out of bed in the morning is the
"hardest part."  Tr. 54.  He does not believe he could sustain an
eight-hour work day "unless I got a lot more medication.  I mean
that's the only thing that's been getting me through so far, just
the pain pills."  *Id.*  Although his "pain contract" with Kaiser
precludes recreational drugs, his cold medicine caused false
positive methamphetamine results.

He has difficulty getting along with people and is edgy,
frustrated, and depressed.  He is impatient and has problems
coping with stress.  Plaintiff believes the medication is
affecting his short-term memory.  He has more bad days than good
days.  A bad day is "not being able to get out of bed and have my
daughter come over and waking me up and asking for me to fix her
some breakfast."  Tr. 56.  His wife has missed work because she
thought Plaintiff could not care for their daughter.  Tr. 57.

**B.  The ALJ's Analysis**

The ALJ found Plaintiff's statements as to the severity of
his impairments were less than fully credible.  Tr. 23.  The ALJ
noted Plaintiff's activities of daily living demonstrated greater
functional capacity than Plaintiff alleged, there were not any
obvious pain generators, there were positive drug screens,

13 - OPINION AND ORDER

Plaintiff received unemployment insurance benefits, and Plaintiff made inconsistent statements regarding his education.  The ALJ found all of these factors undermined Plaintiff's credibility.  Tr. 23.

###  1.  Activities of Daily Living

As noted, the ALJ pointed out that Plaintiff stays home and cares for his daughter, who was approximately two years old on Plaintiff's alleged onset date.  The ALJ noted Plaintiff "testified that his daughter helps him more than he helps her, but that is obviously nonsensical for a 2-year old child (who only recently turned 5)."  Tr. 23.  Plaintiff testified his wife was not working when their daughter was two and had only started working "in the last couple years."  Tr. 23.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001).  Moreover, a claimant's activities of daily living may discredit his testimony about symptoms only when either (1) the activities "meet the threshold for transferable work skills" or (2) the activities contradict his testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).  Here, the Court notes,

14 - OPINION AND ORDER

Plaintiff's activities do not contradict his testimony nor meet
the threshold for transferable work skills.

On this record the Court concludes the ALJ's reliance
on Plaintiff's daily activities is not a legally sufficient
reason for finding Plaintiff's testimony less than fully
credible.

### 2.  Obvious Pain Generators

The ALJ found Plaintiff less than fully credible
because "[t]here are no obvious pain generators."  Tr. 23.  The
ALJ, however, found Plaintiff's degenerative disk disease is a
severe impairment.   In addition, Plaintiff was diagnosed with
pseudoarthrosis or failed back syndrome, which are also obvious
pain generators.

On this record the Court concludes the ALJ's reasoning
for finding Plaintiff's testimony less than fully credible on
this basis does not constitute a legally sufficient reason for
doing so.

### 3.  Positive Drug Screens

Plaintiff testified he did not use methamphetamines.
Tr. 41, 55.  Plaintiff's physicians noted any positive drug
screens for methamphetamine were caused by cold medications.
Tr. 363, 405.

On this record the Court concludes the ALJ's assertion
that he "did not find the claimant's testimony in that regard

15 - OPINION AND ORDER

credible" does not constitute a legally sufficient reason for finding Plaintiff's testimony was less than fully credible. Tr. 23.

### 4. <u>Unemployment Insurance Benefits</u>

The ALJ found Plaintiff's credibility was impugned by the fact that he received unemployment insurance benefits.  The ALJ, however,  acknowledges he did "not explore the claimant's receipt of unemployment benefits."  Tr. 23.  In August 2010 Plaintiff's surgeon, Timothy Treible, M.D., released Plaintiff for light-duty work for four hours a day lifting no more than ten pounds.  Tr. 227.

A Social Security claimant is considered disabled if he is unable to perform full-time work on a regular and continuing basis; *i.e.,* eight hours a day, five days a week.  SSR 96-8p. Eligibility for unemployment insurance benefits from the State of Washington (which Plaintiff received) requires a worker to "be ready, able, and willing, immediately to accept any suitable work."  Wash. Rev. Code § 50.20.010(1)(c)(ii). "Suitable work" may be less than full-time.  Wash. Admin. Code 192-170-010(1(a)(2), 192-170-050(1)(b).  Only full-time work is inconsistent with Plaintiff's disability (*see Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008)), and the record does not indicate whether Plaintiff asserted he was available for full-time or part-time work when he

16 - OPINION AND ORDER

applied for unemployment benefits.

On this record the Court concludes the ALJ's reliance on Plaintiff's application for unemployment insurance benefits does not constitute a legally sufficient reason for the ALJ to find Plaintiff's testimony was less than fully credible.

### 5.  <u>Inconsistent Statements Regarding Education</u>

Plaintiff testified he quit school in the seventh grade because "I was going to work." Tr. 39. The ALJ, however, pointed out that Plaintiff's work record from age 15 to 23 reflected little in earnings.

As noted, in March 2012 Plaintiff reported to the Social Security Administration that he obtained a GED in 1980. Tr. 161. At the hearing before the ALJ, however, Plaintiff testified he did not obtain a GED. Tr. 39. Although this inconsistency is a reason to question a Plaintiff's credibility, standing alone it does not constitute substantial evidence to support the ALJ's finding that Plaintiff's testimony was not credible in light of the totality of the evidence.

In summary, the Court concludes on this record that the ALJ erred when he found Plaintiff's testimony was less than fully credible because his conclusions are not supported by substantial evidence in the record.

## II.  **The ALJ did not err at Step Two.**

Plaintiff contends the ALJ erred at Step Two by failing to

17 - OPINION AND ORDER

include lumbar spine pseudoarthrosis and/or failed back syndrome as a severe impairment.

At Step Two the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Keyser,* 648 F.3d at 724.  The Social Security Regulations and Rulings, as well as the case law that applies them, discuss the Step Two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. § 404.1521(b).

The Step Two inquiry is a *de minimis* screening device to dispose of groundless claims.  *Keyser,* 648 F.3d at 724.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  SSR 85-28.  *See also Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988)(adopting SSR 85-28).  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings and cannot be established on the basis of a claimant's symptoms alone.  20

18 - OPINION AND ORDER

C.F.R. § 404.1508.

The ALJ noted the pseudoarthrosis diagnosis, but he did not include it as a severe impairment.  Because Plaintiff has not identified functional limitations that specifically arise from this condition or that differ from the limitations arising from severe degenerative disc disease, the Court concludes the ALJ's error is harmless.

## III. The Medical Evidence

Plaintiff contends the ALJ erred by improperly weighing the medical evidence.  Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If there is not a conflict between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester*, 81 F.3d at 830.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and to observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)(examining physician).  Even if one

physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of a nonexamining physician by itself is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A.  Treating Physician Timothy Treible, M.D.

The ALJ noted Dr. Treible did not assess Plaintiff with any long-term physical functional limitations. Tr. 26. In August 2010 Dr. Treible released Plaintiff to perform light work for up to four hours a day lifting no more than ten pounds. Tr. 227. In September 2010 Dr. Treible continued the work restrictions. Tr. 229. The ALJ noted both records and then stated the work restrictions "appear to have been lifted" in October (citing Transcript 231-32). Tr. 24-25. The parts of the record cited by the ALJ, however, do not reflect the work restrictions were lifted but instead indicate "faxed disability forms to union" and subsequent records indicate "continue light duty work only." Tr. 233.

On this record the Court concludes the ALJ erred when he

rejected Dr. Treible's opinion because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**B. Examining Physician Donald D. Ramsthel, M.D.**

The ALJ gave "little weight" to Dr. Ramsthel's opinion on the grounds that it was inconsistent with the objective findings, medical records, and opinions from Drs. Treible; Samuel H. Hughes, M.D.; and Jeffrey Sy, M.D.

Dr. Ramsthel examined Plaintiff on July 13, 2013. Tr. 367-76. Dr. Ramsthel found Plaintiff had full bilateral motor strength except his strength was only 4/5 in his bilateral hip flexors. Tr. 368. Dr. Ramsthel diagnosed chronic low-back pain, status post surgery failed back syndrome, and restless-leg syndrome. Tr. 368. The doctor completed a Medical Source Statement of Ability to do Work Related Activities in which he opined Plaintiff was able to stand or to walk for only 25 minutes at a time and up to two hours total in an eight-hour workday and to sit for only five hours in an eight-hour workday. Tr. 372. Dr. Ramsthel found Plaintiff could never lift or carry more than 10 pounds. Tr. 371. Plaintiff could occasionally reach in any direction, but "reaching movements aggravate his low back pain." Tr. 373. He could never operate foot controls because of failed back syndrome. Tr. 373. For the same reason Plaintiff could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl.

Tr. 374.  Dr. Ramsthel concluded Plaintiff's impairments were present for "at least" the past 12 months.  Tr. 376.

Dr. Hughes examined Plaintiff in August 2012 in a neurological consultation.  He diagnosed Plaintiff with failed back surgery syndrome and recommended palliative procedures such as nerve blockade or ablation.  Tr 331-34.  Neither Dr. Hughes nor Dr. Sy assessed Plaintiff's functional limitations.

Dr. Ramsthel found Plaintiff had a reduced range of motion in the dorsolumbar region.  The ALJ rejected this assessment and stated none of the treating doctors found a limited range of motion.  Tr. 27.  The record, however, reflects Dr. Jenkins found Plaintiff had a reduced range of motion "in all planes." Tr. 287.

The ALJ also found Dr. Ramsthel "appears to rely primarily on the claimant's anecdotal claims."  The record, however, reflects Dr. Ramsthel performed a full examination, and, in any event, this Court has concluded the ALJ erred when he found Plaintiff's testimony was less than fully credible.

On this record the Court concludes the ALJ erred when he rejected Dr. Ramsthel's opinion because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**C.  Examining Physician Loren Jenkins, M.D.**

The ALJ noted Dr. Jenkins's report, but the ALJ did not

specify what weight, if any, he gave it.  Tr. 25.

In April 2012 Plaintiff was seen by Dr. Jenkins for a spine consultation.  Tr. 286-87.  Dr. Jenkins noted Plaintiff "had a L4-S1 laminectomy, PSIF/TLIF.  Post op the numbness and left radicular pain went away but he has had severe unrelenting Low Back Pain at surgical site.  Not working.  Cable Lumbo-Sacral Orthosis (brace) helps, walking helps.  The pain is worse with standing, bending, lifting, activities of daily living." Tr. 286.

Dr. Jenkins examined Plaintiff and found his spine as "nontender to palpation, ramrod straight spine with hypokyphosis and hypolordosis, pain with palpation at low lumbar spine at surgical site, range of motion limited in all planes and pain w motion in all planes."  Tr. 287.  Radiographs showed "L4-S1 two level tlif/psif.  Fusion not clear.  Implants intact."  Tr. 287.

Dr. Jenkins diagnosed Plaintiff with chronic pain syndrome and restless-leg syndrome and noted Plaintiff's history of lumbosacral spine surgery.  Dr. Jenkins stated:  "Severe pain, disabled at this time by report.  Counseling related to diagnosis, treatment options, and prognosis.  Also discussed difficulty in diagnosis. . . .  We have come to the conclusion that the best approach will be to get more info and help in management."  Tr. 287.

Dr. Jenkins read and reviewed Plaintiff's CT scan and found

spinal pseudoarthrosis at L4-5 and L5-S1.  He stated:  "I do not

see any type of revision surgery moving this man back into the

physical work force.  He would always be restricted in lifting

and activities even with the best outcome."  Tr. 289.

Although the ALJ found Dr. Jenkins did not assess Plaintiff's

long-term physical functional limitations, the record reflects

Dr. Jenkins concluded Plaintiff would "always be restricted in

lifting and activities."  Tr. 26, 289.

On this record the Court concludes the ALJ erred when he

rejected Dr. Jenkins's opinion because the ALJ did not provide

legally sufficient reasons supported by substantial evidence in

the record for doing so.

**D.   Treating Physician Marc C. Rothgery, M.D.**

The ALJ did not review Dr. Rothgery's opinion because it was

submitted to the Appeals Council after Plaintiff's hearing.  The

Appeals Council rejected the opinion as relating to a time after

the September 19, 2013, decision by the ALJ.  Tr. 2.

This Court can consider a physician's opinion rejected by

the Appeals Council to determine whether, in light of the record

as a whole, the ALJ's decision was supported by substantial

evidence and free of legal error.  *Ramirez v. Shalala,* 8 F.3d

1449, 1451 (9th Cir. 1993).

Dr. Rothgery began treating Plaintiff in June 2013.

Tr. 362-65.  In documents submitted to and reviewed by the

24 - OPINION AND ORDER

Appeals Council, Dr. Rothgery reported he reviewed Dr. Ramsthel's July 2013 assessment and concurred with those findings as to Plaintiff's functional limitations.  Pl.'s Ex. 1.

Thus, on this record and in light of this Court's findings as to the ALJ's errors, the Court concludes the ALJ's decision is not supported by legally sufficient reasons or substantial evidence in the record.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court.  *Harman*, 211 F.3d 1178.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The

Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when he found Plaintiff's testimony was less than fully credible. In addition, the Court has concluded the ALJ erred when he rejected the opinions of Drs. Treible, Jenkins, Ramsthel, and Rothgery. If credited, those opinions establish Plaintiff is disabled. Thus, the Court concludes Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman,* 211 F.3d at 117.

Accordingly, the Court remands this matter for the immediate calculation and award of benefits.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to sentence four, 42 U.S.C. § 405(g), for the immediate

calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 10th day of May, 2016.


                                    /s/ Anna J. Brown

                                    _____
                                    ANNA J. BROWN
                                    United States District Judge

27 - OPINION AND ORDER